[No. 2106.   Decided July 11; 1896.]

ISAAC OLESON, *Respondent*, v. BANK OF TACOMA *et al.*,
*Appellants.*

RECEIVERS — APPOINTMENT FOR INSOLVENT CORPORATION — ASSIGN-
MENT FOR BENEFIT OF CREDITORS — RIGHTS OF ASSIGNEE AS
AGAINST RECEIVER.

The making of a general assignment of its property for the bene-
fit of creditors by an insolvent corporation can have no effect upon
the power of a court, under Code Proc., § 326, to appoint a re-
ceiver at the instance of a creditor of the corporation.

A deed of assignment by an insolvent corporation can be set
aside by the court, upon the subsequent appointment of a receiver
at the suit of a creditor of the corporation.

A receiver having been appointed for an insolvent corporation,
he is entitled to the possession of all of the assets of the corporation,
as against an assignee holding under a prior voluntary assignment
executed by the corporation while insolvent.

Appeal from Superior Court, Pierce County.—HON.
JOHN C. STALLCUP, Judge.   Affirmed.

*Crowley, Sullivan & Grosscup*, and *Richard Saxe
Jones*, for appellants.

*A. N. Jordan*, and *J. S. Whitehouse*, for respondent.

The opinion of the court was delivered by

HOYT, C. J.—The Tacoma Trust & Savings Bank
was a corporation doing business in the city of Tacoma.
On the 25th day of May, 1894, it transferred, assigned,
and delivered to the Bank of Tacoma, a corporation
organized under the laws of the state of Washington,
and doing business in said city, all of its assets, of
whatever kind and description; and said Bank of
Tacoma, in consideration of said transfer, assumed
and agreed to pay all the debts and liabilities of said
Tacoma Trust & Savings Bank.   On the 17th day of

August, 1895, said Bank of Tacoma executed a general assignment whereby it attempted to convey all of its property and assets to the defendant Edward S. Alexander as assignee for the benefit of creditors. Thereafter the plaintiff and respondent, Isaac Oleson, commenced this action, by which he sought to have a receiver appointed to take charge of the assets of these banks for the purpose of having them reduced to money, and ratably applied in discharge of the liabilities of said banks. One of the alleged grounds for the appointment of such receiver was the insolvency of the corporations. There were other grounds, growing out of the alleged fact that the assignment to said Alexander was fraudulent and void for various reasons connected with its execution, and the object for which it was executed. Upon the first ground it was claimed by the plaintiff that under our statute it was the duty of the court, at the instance of any creditor of a corporation, to appoint a receiver, whenever it was made to appear that such corporation was insolvent. On the other, it was claimed that the assignment to Alexander, having been made in fraud of the rights of creditors, could be set aside at the suit of any of such creditors, and that, on account of the fraudulent transfer of all of the assets of the banks, it was the duty of the court to appoint a receiver to close up their business in the interest of their creditors. The principal part of the argument has been devoted to questions growing out of the second claim above referred to. Counsel for appellants seem to have assumed, as a basis of their arguments, the fact that under the decisions of this court an insolvent corporation could make a common-law assignment, and the further fact that, such an assignment having been made, it could not be set aside, and the rights of

the assignee thereunder affected, excepting for some fraud in its execution, to which the assignee was a party, or by reason of the unfitness of such assignee, or some misbehavior on his part. If these claims of the appellants are sustained, it will become necessary for us to enter into a discussion of the questions elaborately argued by counsel for appellants, to the effect that the assignment was not made for the purpose of defrauding creditors, that the assignee was a proper person to close up the affairs of the bank, and that he had been guilty of no misconduct which would authorize the court to remove him. If, on the contrary, it be held either that an insolvent corporation cannot make a common-law assignment, or that such an assignment does not oust a court of equity of jurisdiction to close up the affairs of the corporation through the agency of a receiver, a discussion of the questions presented by these elaborate arguments will be unnecessary. That an insolvent corporation can make an assignment of all of its property, which might well be called a "common-law assignment," and which will have the effect of transferring to the assignee title to the property for certain purposes, has been repeatedly held by this court. See *Nyman v. Berry*, 3 Wash. 734 (29 Pac. 557); *Thompson v. Huron Lumber Co.*, 4 Wash. 600 (30 Pac. 741); *McKay v. Elwood*, 12 Wash. 579 (41 Pac. 919). But in none of these cases was the question presented as to the effect of such an assignment upon the powers of a court of equity to set it aside and appoint a receiver to take possession of all of the property of such corporation and close up its affairs. The most that can be said to have been decided by these cases is that such an assignment conveys the legal title of the property to the assignee, and that such title cannot be successfully

attacked in an action at law, and can be asserted against any one claiming adversely thereto, but nothing was said therein as to the effect of such an assignment upon the powers of a court of equity to take charge of the affairs of the corporation which had made such assignment. An examination of such cases will show that, while the right of an insolvent corporation to make what is called a "common-law assignment" is recognized, it was not the intention of the court to hold that such an assignment had all the force and effect of an assignment at common law. On the contrary, it clearly appears from what was said in one or all of these cases that the power of an insolvent corporation to make an assignment for the benefit of creditors was more or less restricted. The right to prefer a creditor was an incident of a common-law assignment, but a necessary inference from what was said in these cases was that such right must be denied to an insolvent corporation, and such denial was necessary to protect the rights of creditors in the property of an insolvent corporation as a trust fund for their benefit. It follows that, while it must be accepted as the established law of this state that an insolvent corporation can make an assignment which will be valid and binding until attacked by a creditor of the corporation, the effect of such assignment, when so attacked, is an open question, and must be decided under our statute upon principle and authority, unaided by any decision of this court.

Section 325 of the Code of Procedure provides that

"A receiver is a person appointed by a court or judicial officer to take charge of property during the pending of a civil action or proceeding, or upon a judgment, decree or order therein, and to manage and dispose of it as the court or officer may direct."

And § 326 provides that

"A receiver may be appointed by the court in the following cases:   .   .   .   (5) When a corporation has been dissolved or is insolvent, or is in imminent danger of insolvency, or has forfeited its corporate rights."

Such being the provisions of our statute, it seems too clear for argument that the court of proper jurisdiction has a right to appoint a receiver, at the instance of any party interested, whenever it is made to appear to it that such corporation is insolvent, or has forfeited its corporate rights. No other conditions are imposed by the statute, and to import any other would be judicial legislation. Hence it must be held that it is the duty of the superior court of the proper county to appoint a receiver of an insolvent corporation whenever an interested party asks for such action on its part, and establishes the fact of such insolvency to the satisfaction of such court. The large number of cases cited by appellants upon the question as to when a receiver will be appointed were all decided under statutes unlike ours, and can furnish little aid in its construction. In fact, there is no room for construction. The statute is in express terms, and its language is capable of but one interpretation; and thereunder it must be held that a creditor has only to establish the fact that he is such, and that the corporation of which he is such creditor is insolvent, to make it the duty of the proper court to appoint a receiver to take possession of the property of such corporation and close up its affairs. Can a corporation, by its voluntary act in transferring to an assignee all the assets of such corporation, divest the court of the jurisdiction to close up its affairs? To hold that it can would do violence to the statutory provision above referred to. No exception to the power of the court is

made by the statute, and no good reason can be given for importing one; for while it is true that an assignment by the corporation of all of its property for the benefit of its creditors, without preference, may be in furtherance of the same object which the court is seeking when it appoints a receiver for the purpose of winding up the affairs of an insolvent corporation, yet such object cannot be fully accomplished by such assignee unless his powers as such are enlarged. As a common law assignee, he could assert no rights which his assignor could not have asserted. Hence, if his powers be restricted to those under the assignment, construed as one at common law, he could reach no equitable asset of the corporation. It follows that the rights of creditors could only be fully protected by such assignee by his powers being so extended as to vest him, not only with the rights of his assignor but also of its creditors. But since he gets no rights to the property excepting by a purely legal instrument, the force of which at common law was well understood, it would be judicial construction, amounting substantially to legislation, to hold that the making of such assignment carried with it, not only the rights of the corporation which made it, but also of its creditors. But, if it be held that such an assignment cannot be set aside by a court of equity at the instance of a creditor, it must be held that the powers of the assignee are thus enlarged, or two administrations of the affairs of an insolvent corporation will become necessary,— one to enforce such claims as the corporation itself could have enforced, and apply the proceeds *pro rata* to the discharge of the claims of its creditors, and the other by a receiver to enforce those rights available only to creditors, and distribute their proceeds. Such dual administration would so add to

the expense of closing up the affairs of an insolvent corporation that some construction making it unnecessary should be adopted, if possible. Two only seem possible,—the one which enlarges the power of the assignee under such an assignment as above stated, or one which holds that such an assignment, though perfectly valid at law, is subject to be set aside by a court of equity at the instance of any creditor of the corporation. Of these two constructions, the last will best harmonize with the provisions of our statute. The right of a creditor to have a receiver appointed whenever a corporation becomes insolvent, having been expressly given by statute, must be protected; and such right having been protected, and such receiver having been appointed, the right of the court to set aside the deed of assignment can be upheld upon familiar principles. Such deed of assignment is a voluntary one, without any consideration moving from the assignee to the assignor, and, for want of such consideration, could be set aside as in fraud of the right of creditors, whether or not any fraud was intended.

Our statute requiring us to hold that a receiver must be appointed at the instance of a creditor of an insolvent corporation requires us to further hold that the object of such statute can only be fully accomplished by holding that, when such receiver is appointed, he is entitled to the possession of all of the assets of the corporation, the title to which has not been parted with by such corporation upon sufficient consideration moving to it at the time the instrument which purported to convey such assets was executed. Aside from the fact that such statute can only be made fully effective by this construction is the further consideration that the right of the court to appoint a receiver ought not to be taken away by the voluntary act of the insolvent

corporation.    If it could be, it would be within the power of every corporation, when it learned that proceedings were to be instituted for the appointment of a receiver, to defeat such appointment by making a voluntary assignment.    We feel compelled to hold that the making of a general assignment of its property by an insolvent corporation can have no effect upon the power of the court to appoint a receiver at the instance of a creditor of the corporation.

Such being our conclusions as to the law of this case, but two questions of fact are presented which are material.    One is as to whether or not the plaintiff was a creditor of the corporations for which the receiver was appointed, and the other is as to the insolvency of such corporations.    As to both of these questions the superior court has made affirmative findings of fact, which are sufficiently supported by the evidence.    It follows that the decree appealed from must be affirmed.

DUNBAR, ANDERS, GORDON and SCOTT, JJ., concur.